# EXHIBIT

# "A"

 **ORIGINAL**

**FILED**

2018 JAN 31  PM 4:44

SUPERIOR/STATE COURT
DOUGLAS COUNTY, GA
TAMMY M. HOWARD, CLERK

## IN THE SUPERIOR COURT OF DOUGLAS COUNTY

### STATE OF GEORGIA

| | |
|---|---|
| GREG L. ALMOND AND JOCELYN ALMOND, | CIVIL ACTION NO.: 18CV00150 |
| **Plaintiff,** | CCA |
| vs. | **COMPLAINT** |
| THE BANK OF NEW YORK MELLON, AS TRUSTEE | |
| **Defendant** | |

COMES NOW, Greg and Jocelyn Almond ("Plaintiffs") and file this Wrongful

Foreclosure Action under OCGA § 44-14-184 and OCGA § 16-9-90 and show the court as follows:

Plaintiffs are the current residents/ occupants of the property known as 9914

Scarlet Oak Drive, Douglasville, Georgia 30135 ("The Property"). Plaintiffs have resided at the

Property since March 1995 and are subject to the Jurisdiction of this Court.

In March of 1995 Plaintiffs executed a Deed to Secure Debt in favor of Sunshine

Mortgage, in the amount of $69,300. ("Principal Amount"), along with a Balloon Note in the

amount of $62,738. ("Balloon Note Amount").

Said Deed to secure debt & Balloon Note were filed with the Clerk of Superior

Court in Douglas County Georgia in deed Book 924, Page 319.

1

615591

15 YEARS was the Term for repayment of the Principal ($69,300) plus Interest, beginning in March 1995 until February 2010 ("Maturity Date").

Deed to Secure Debt and Balloon Note were transferred from EMC Mortgage, Servicing agent, to JP Morgan Chase in May 2008 (A full 13years & 5months into repayment of the Principal & Interest).

All payments of the Principal & Interest were paid in full by the Maturity Date in February 2010.

The Balloon Note amount came due in February 2010.  No interest was due on this amount of the Loan under Terms as set in the Deed to Secure Debt in Paragraphs 1 & 2 and Balloon Note in Paragraphs in 3 & 4.


In September of 2013 Plaintiffs filed for Bankruptcy for repayment of the Balloon amount ($62,738.).

A Final Order Granting Bankruptcy was signed on January 10, 2014 in The U.S. Northern District Bankruptcy Court.  Per the Order of the Court, the amount to be repaid was $53,823.54.

As of December 8, 2016, $47,445.43 Had been paid through the office of Mary Ida Townson, Trustee of the U.S. Northern District Bankruptcy Court and disbursed to JP Morgan Chase against this Debt.

2

**IN VIOLATION OF Title 18 U.S.C. § 1001 (a)**

On August 31,2016 JP Morgan Chase as Plaintiff filed a Motion for Relief in the U.S. Northern District Bankruptcy Court falsely alleging that 35 Mortgage Payments had been missed.

This Motion sought to mislead the Court into believing that payments were due since October 2013 and outside of the Payments to JP Morgan Chase being paid directly through the office of Mary Ida Townson, Trustee of the U.S. Northern District Bankruptcy Court.

All payments due were Paid into the Trustee, then Disbursed to the various Creditors, including JP Morgan Chase. All payments were current at the time of the filing of their Motion for Relief and no Additional payments were due.

The Motion for Relief was accompanied by a copy of an Affidavit of Amanda Schleich. The Affidavit claimed that no payments had been received by JP Morgan Chase since October 2013. Said Affidavit was filed as a copy and contained no information to identify or contact Amanda Schleich in order to verify how this person had knowledge of the facts of Plaintiff's Bankruptcy, or any Payments made against the debt. The Attachments to the Affidavit were Unreadable. The final Signature page contained a Graph, which is what was the only information relied upon in Granting the Motion.

JP Morgan Chase has a history of filing Motions for Relief using falsified information as will be shown in the Brief in support filed with this Complaint.

3

As of this date, JP Morgan Chase has shown no Order by the Court, or any other such Evidence, directing payments to be made outside of those being paid through the Trustee. They have provided no proof that any such payments are owed.

JP Morgan Chase has also given no credit for, or, accounting for the monies they have received through the U.S. Bankruptcy Court. In the amount of ($47,445.43).

On December 8, 2017 The U.S. Northern District Bankruptcy Court Granted the Motion for Relief. The Court states in the Ruling that there was "No Opposition". That statement is incorrect.

At the Hearing the Court was deprived of hearing from the Plaintiff directly and the Plaintiff was deprived, through Deceptive means, of the opportunity to be inside the Courtroom at the time the Case was brought before the Court. The Plaintiff looks forward to further explaining to this Court in this Action.

JP Morgan Chase by and through their Attorney provided False and Misleading information to the U.S. Northern District Bankruptcy Court in an effort to deceive the Court into believing they were owed monies that they were not, in violation of Federal Law Title 18 U.S.C. § 152 (2),(3),(4) and Title 18 U.S.C. § 1001 (a).

Plaintiffs believe this was a purposeful effort to have Plaintiffs' the case thrown out of Bankruptcy in order to Foreclose on the Property.

4

JP Morgan Chase then transferred the loan to Select Portfolio Servicing. In their Notice of Intent to Foreclose, Select Portfolio Servicing made the claim that they were now due $108,000. ($62,386.33 Balloon Note amount & remainder in Interest) as payment on the Property.

Select Portfolio Servicing made no mention of credit for payments made through the Bankruptcy. Additionally, they demanded Interest on the Balloon note amount.

Set out in Paragraphs 1 & 2 of the Deed to Secure Debt, and Paragraphs 3 & 4 of the Balloon Note are terms and conditions governing payment of Principal and Interest.

Clearly stated no less than three (3) times "Interest will be charged until the Principal ($69,300.) has been paid in full."

There are no provisions in the Deed to Secure Debt or the Balloon Note that make exceptions for Bankruptcy filing or grants the right to collect interest on this portion of the Debt.

In April 2017 Select Portfolio Servicing, Transferee of JP Morgan Chase, executed a Foreclosure Action based on information they received from the above stated Motion for Relief.

On April 4. 2017 Select Portfolio Servicing executed a Deed Under Power, filed in Deed Book 3492 pg. 430, listing the Default Amount as being $69,300.00, the Original Principal Amount, which had been paid in full since February of 2010.

5

The Bank of New York Mellon claims to have purchased the Property for $108,000. at Auction.  The Bank of New York Mellon then filed a Dispossessory in the Magistrate Court of Douglas County, Georgia.

Upon Hearing of the Dispossessory in the Magistrate Court of Douglas County on November 13, 2017, and Debtor's Evidence of inconsistencies in the Motion for Relief and repayment amounts against this Debt, the Court Remanded the Dispossessory to the Superior Court for Hearing.

**WHEREAS:**  Plaintiffs in this Case entered into Bankruptcy for repayment of the amount of the Balloon Note Amount of $62,738. Only.

The $69,300. Principal Amount of the Deed to Secure Debt had been paid in full by its Due Date in February 2010 with Interest under the terms of the Deed to Secure Debt.

The "Truth in Lending Disclosure Statement" submitted at the closing of this Loan in March 1995 shows Total repayment amount to be $212,176.49. (Includes - Principal, Interest & Balloon amounts) .

To this date Plaintiffs have paid a total of $197,000. Towards repayment of this Loan  (Includes - $150.000. of Principal & Interest and $47, 445.43. Of Balloon).

Plaintiffs were within (6) payments of completing full repayment of this Debt under the Terms of the Bankruptcy.

The claims made in the Motion for Relief were Intentionally False. At time the Motion was filed, There were not 35 payments left on the entirety of this Loan.

6

**WHEREAS:** In March 2011 the U.S Department of the Treasury, through the Office of the Comptroller of Currency, filed Suit against JP Morgan Chase for Deceptive and Unfair Practices in Foreclosures in Case # AA-EC-11-15.

That case culminated in a Consent Order filed in March 2011.

Under Article I "Comptrollers Finding", the Government found that JP Morgan Chase had routinely engaged in fabricating documents in order to obtain Motions for Relief, had made false assertions about the amount of Principal & Interest due, had failed to give credit for monies paid against a debt by Debtors, and other deceptive practices.

In the Amended Consent Order JP Morgan Chase was Ordered to pay Homeowners in Compensation the Amount of $753,000,000,00. For wrongdoing in residential Foreclosures.

The basis of the Dispossessory and the Foreclosure are rooted in the false information set forth in the Motion for Relief.

**WHEREFORE:** The Plaintiffs prays for the following Relief

(A) The Court will Dismiss the Dispossessory filed by Defendant.

(B) The Court will Dismiss the Foreclosure Action against the Property.

(C) Grant full Ownership of the Property to Plaintiffs

(D) Any such Damages as the Court deems Fair & Just

7

Dated this 31st of January, 2017.

GREG L. ALMOND, PLAINTIFF PRO SE

Greg & Jocelyn Almond
9914 Scarlet Oak Drive
Douglasville, Georgia 30135
(678) 982-8265
greglalmond@hotmail.com

8

# IN THE SUPERIOR COURT OF DOUGLAS COUNTY

## STATE OF GEORGIA

**GREG L ALMOND AND JOCELYN ALMOND**
**PLAINTIFF**

                                        CIVIL ACTION #:  18CV00150

**VS**

**THE BANK OF NEW YORK MELLON**
**DEFENDANT**

## SUMMONS

TO THE ABOVE NAMED DEFENDANT:

      You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

GREG L ALMOND
9914 SCARLET OAK DRIVE
DOUGLASVILLE, GA 30135

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for relief demanded in the complaint.

This  January 31, 2018.

_Tammy M Howard_
_____
Tammy M. Howard
Clerk of Superior Court

GREG L. ALMOND, JOCELYN ALMOND, | CIVIL ACTION.: 18-CV-00150

**Plaintiff,**

**vs.**

**THE BANK OF NEW YORK MELLON, AS TRUSTEE,**

**Defendant**

COPY

2018 FEB 22 PM 3:07 FILED

SUPERIOR/STATE COURT
DOUGLAS COUNTY GA
TAMMY H. HOWARD, CLERK

## SUPPLEMENTAL BRIEF IN SUPPORT OF COMPLAINT

Greg and Jocelyn Almond file this Brief in Support of Complaint filed on January 31st, 2018 and show the Court as follows:

### STATEMENT OF FACTS

### <u>1.</u>

Exhibit "A" – On 8/31/2016 JP Morgan Chase filed a Motion for relief in The U.S. Northern District Bankruptcy Court claiming <u>35</u> payments had been missed, beginning from October 2013. It was accompanied by the Affidavit of Amanda Schleich.

*The Defendants Motion for Relief argued payments were due beginning October 2013.

### PAYMENTS:

Mortgage payments are not made in perpetuity. They have a beginning and an end. The Plaintiffs in this Case began making payments in March of 1995 and completed payments by February 2010.

1) Exhibits "B & C" – The Security Deed and Balloon Note show the Term for Repayment of the Principal Amount ($69,300.00) plus Interest was <u>15 YEARS</u>. Beginning <u>March 1995 Ending February of 2010</u>.

2) Exhibits ",E through L" - Monthly Statements show reductions in the Principal Amount owed after Payments were made.   (*Arrows point to Statement Date & Amount owed)

      a) 07/24/2000 - $68,307.64 (Exhibit "E")
      b) 09/28/2001 - $67,442.25 (Exhibit "F")
      c) 12/15/2005 - $66,019.01 (Exhibit "G")
      d) 12/15/2006 - $65,182.83 (Exhibit "H")

   e) 11/16/2007 - $63,785.35  (Exhibit "I")

   f) 11/13/2008 - $62,808.25  (Exhibit "J")

   g) 06/05/2009 - $62,508.51  (Exhibit "K")  (*At this point the Principal Amount
      & Interest had been paid in Full.)

   h) 11/30/2010 - $62,386.33  (Exhibit "L") (*This Amount went into Bankruptcy)

3) Exhibit "D" - The Truth in Lending Disclosure Statement shows the Total amount of the
Principal plus Interest to be repaid within the 15 Year period was $145,611.99.

4) Exhibit "D" - The Total Amount of Balloon Payment was $62,738.34  (now $62,386.33).

5) Exhibit "D" - The Total Amount of Principal, Interest & Balloon was $212,176.49.

6) Debtors have, to date, paid a total of approximately $198,000. of the $212,176.49. To be
repaid.

**2.**

**BANKRUPTCY:**

1) The Amount submitted to the Bankruptcy Court by Debtor was $62,386.33. That Amount
was reduced by the Bankruptcy Court to $53,823.54 to be repaid.

2) Exhibits "M & N" – Trustee's Final Report & National Data Center printout.
As of December 8, 2016, the date the Motion for Relief was Granted, the Debtors had
paid a Total of $47,445.43. towards repayment of the $53,823.54.

3) Defendants as of this date have shown absolutely no proof of the payments they claimed
in their Motion for Relief.

4) Exhibit "O" - The Defendants in this Case cite the Chapter 13 Plan of the Debtor,
specifically Page 4 - Section B, as verification of payments owed.

The line that states "Debtor will make all post-petition mortgage payments directly to each
Mortgage creditor as those payments ordinarily come due."

The Defendants argument relies heavily on this Line.

a) See Exhibit "K" –  As of 06/05/2009, the Principal Amount ($69,300.00) was paid in full.

b) See Exhibit "L"  - The Balloon Amount ($62,386.33) went into Bankruptcy.

c) See Exhibits "M & N" - Payments were made directly from the Office of Mary Ida
Townson, Trustee for the U.S. Northern District Bankruptcy Court to JP Morgan Chase.

5) The Defendants argue payments were due, yet have not produced any explanations of:

a)  Time periods for which they claim payments were due (Months & Years)

b)  Amounts due for that time period.

c)  Total dollar amounts claimed for that time period.

As of the date of this Filing, The Defendants have produced none of this Information.

6) See Exhibit "A" (attachment to Motion for Relief) -  Additionally, they continue to present to the Court, as evidence of payments due, the Affidavit of Amanda Schleich. They have presented no further information on this person for the purpose of verification;

      a)  Vice President of What Department?
      b)  Contact Information
      c)  Contact Information to Human Resources for Verification of Employment
      d)  Also, the Attachments to the Affidavit are Unreadable.

It should be Noted by this Court that the Defendants have changed the appearance of the Affidavit as it was filed in the U.S. Bankruptcy Court.

### 3.

Exhibit "P" – Consent Order

Bank Examiners for The OFFICE OF THE COMPTROLLER OF CURRENCY conducted an examination of the foreclosure processes of J.P. Morgan Chase in 2011.

A Consent Cease and Desist Order was issued on April 13, 2011 in Case # AA-EC-11-15.

In Article I, the Comptrollers Findings, are the practices J.P. Morgan Chase was found to have engaged in.

      a)  **(Page 2)  Article I (2) (a)** - filed or caused to be filed in state and federal courts affidavits …. making various assertions, such as ownership of the mortgage note and mortgage, the amount of principal and interest due …. in which the affiant represented

that the assertions in the affidavit were made based on personal knowledge....,when, in many cases, they were not based on such personal knowledge .....

In Article IV, Compliance Program, J.P Morgan Chase was Ordered to submit a plan to address these issues.

b) See also **- (Page 7)   Article IV (1) (b)(f)(g)(h)** -- Compliance Program

## ARGUMENT

There are 2 elements of the argument by JP Morgan Chase & it's Successors.  They are **(1)** the Sworn statement of Amanda Schleich, someone whose qualifications and knowledge of the Bankruptcy cannot be verified because the Attorneys have provided absolutely no contact information or any other form of verification, and **(2)** The Debtors Chapter 13 Plan, specifically Section B and the line that states "Debtor will make all post-petition mortgage payments directly to each Mortgage creditor as those payments ordinarily come due.", for which they have provided no evidence of any payments due.

As stated in the Answer filed in the Douglas County Magistrate Court, this is a Mortgage Scam. The same Practices used in the Bankruptcy Court, Foreclosure and subsequent Dispossessory are the same as those that caused the OFFICE OF THE COMPTROLLER OF CURRENCY to issue a Consent Cease and Desist Order on April 13, 2011 in Case # AA-EC-11-15.

As a result of that Action, J.P. Morgan Chase had to pay out approximately $753,000,000.00 in Compensation to Homeowners they had wrongfully foreclosed on.

The Defendants in this Complaint are relying on a lack of scrutiny of the facts by the Courts. The Defendants ask the Court to give it more scrutiny.

## CITATIONS

**O.C.G.A. § 16-9-60 "Foreclosure fraud"**

(a) "foreclosure fraud" shall include any of the following: knowingly or willfully representing that moneys provided to or on behalf of a debtor, as defined in Code Section 44-14-162.1 in connection with property used as a dwelling place by said debtor, are a loan if in fact they are used to purchase said property or such debtor's interest therein;

(b) Any person who by foreclosure fraud purchases or attempts residential property means of such fraudulent scheme shall be guilty of ...

Submitted this _____ day of February, 2018.

                               _____

                               Greg L. Almond, Pro Se

Greg L. Almond
9914 Scarlet Oak Drive
Douglasville, Georgia 30135
(678) 982-8265
greglalmond@hotmail.com

ORIG

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IN RE:

GREGORY LAMAR ALMOND,

        Debtor.

---

THE BANK OF NEW YORK MELLON, FKA
THE BANK OF NEW YORK, AS
SUCCESSOR TRUSTEE TO JP MORGAN
CHASE BANK, N.A. AS TRUSTEE, FKA
BANK ONE, NATIONAL ASSOCIATION,
AS TRUSTEE FOR BEAR STEARNS ASSET
BACKED SECURITIES TRUST 2002-2,
ASSET BACKED CERTIFICATES, SERIES
2002-2,

        Movant,

v.

GREGORY LAMAR ALMOND, Debtor
JOCELYN ALMOND, Co-Debtor
MARY IDA TOWNSON, Trustee,

        Respondent(s).

CASE NO. 13-68985-mgd

CHAPTER: 13

JUDGE: MARY GRACE DIEHL

CONTESTED MATTER

---

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY
## AND THE CO-DEBTOR STAY

COMES NOW Movant named above and shows this Court the following:

1.    This Motion is made pursuant to Section 362(d) of the Bankruptcy Code for relief from the automatic stay and pursuant to Section 1301(c) of the Bankruptcy Code for relief from the co-debtor stay, for all purposes allowed by law and the contract between the parties, including, but not limited to, the right to foreclose on certain real property by a private power of sale contained in a certain Deed to Secure Debt.

2.    Movant is the holder or the servicer of a loan secured by certain real property in

EXHIBIT "A" ( Pgs.)

which the Debtor has an interest. Said real property is security for a Promissory Note, and is commonly known as 9914 Scarlet Oak Drive, Douglasville, GA 30135.

3.     There has been a default in mortgage payments which have come due since this case was filed. As of July 29, 2016, thirty five (35) post petition payments have been missed. Additionally, this loan has matured under the terms of the loan documents and the confirmed Plan does not provide for the total debt.

4.     The unpaid principal balance is $62,386.33, and interest is due thereon in accordance with the Promissory Note.

5.     Because of the default and clear inability to make all required payments, Movant is not adequately protected. Movant's interest would also be irreparably harmed by the continuation of the co-debtor stay.

6.     Movant requests that in the event the Motion is granted, the Trustee be ordered to cease funding any balance of Movant's claim and that Fed. R. Bank. P. 3002.1 be held not to apply to Movant, its successors and/or assigns, as Movant's claim would not be provided for in the Plan pursuant to Section 1322(b)(5) of the Code.

7.     Movant requests that the provisions of Fed. R. Bankr. P 4001(a)(3) be waived.

8.     JPMorgan Chase Bank, N.A., services the loan on the property referenced in this Motion for Relief. In the event the automatic stay in this case is lifted/set aside, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of The Bank of New York Mellon, FKA The Bank of New York, as successor Trustee to JP Morgan Chase Bank, N.A. as Trustee, FKA Bank One, National Association, as Trustee for Bear Stearns Asset Backed Securities Trust 2002-2, Asset Backed Certificates, Series 2002-2. Said entity, directly or

through an agent, has possession of the promissory note. The promissory note is either made payable to said entity or has been duly endorsed.

WHEREFORE, Movant prays for an Order lifting the automatic stay and co-debtor stay, authorizing it to proceed with the exercise of its private power of sale and to foreclosure under its Loan Documents and appropriate state statutes. Movant also prays that Fed. R. Bankr. P. 3002.1 be held not applicable in accordance with the request hereinbefore, that Fed. R. Bankr. P. 4001(a)(3) be waived. Movant also prays that the Chapter 13 Trustee make no further payments on account of Movant's secured claim, that Movant be permitted to contact the Debtor or Debtor's Counsel, as appropriate, through its agents, servicers and representatives for the purpose of engaging in discussions and consideration for possible loss mitigation options, and for such other and further relief as is just and equitable.

/s/ Brian K. Jordan
Brian K. Jordan, Bar No.: 113008
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: bjordan@aldridgepite.com

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 13-68985-mgd |
| GREGORY LAMAR ALMOND, | CHAPTER: 13 |
| Debtor. | JUDGE: MARY GRACE DIEHL |

## SUPPLEMENTAL DECLARATION IN SUPPORT OF
## MOTION FOR RELIEF FROM AUTOMATIC STAY

I, _Amanda Schleich_ , declare under penalty of perjury as follows:

1.       This supplemental declaration is provided in support of the Motion for Relief from Stay (the "Motion") filed contemporaneously herewith.

2.       I am a/an ___Vice President___ of JPMorgan Chase Bank, National Association ("Chase") and am authorized to sign this supplemental declaration on behalf of Chase as servicing agent for The Bank of New York Mellon, FKA The Bank of New York, as successor Trustee to JP Morgan Chase Bank, N.A. as Trustee, FKA Bank One, National Association, as Trustee for Bear Stearns Asset Backed Securities Trust 2002-2, Asset Backed Certificates, Series 2002-2. In this position, I have access to the business records of Chase, and my responsibilities include ascertaining and verifying amounts due and payable as to delinquent bankruptcy accounts.

3.       The facts stated in this declaration are based upon information that I obtained by reviewing records maintained in the ordinary course of Chase's business, as part of regularly conducted business activity, by or from information transmitted by person(s) with knowledge of the events described therein, at or near the time of the event described.

Case No.: 13-68985-mgd

Case# 13-68985-mgd

4.      Greg Almond and Jocelyn Almond ("Borrowers") executed a note dated February 8, 1995 in favor of Sunshine Mortgage Corporation, in the original principal sum of $69,300.00 (the "Note").

5.      The Note is secured by a deed to secure debt encumbering certain real property commonly known as 9914 Scarlet Oak Drive, Douglasville, GA 30135.

6.      The Movant's agent has possession of the original promissory note, and the note is endorsed in blank.

7.      As of July 29, 2016, the Borrowers failed to make one or more post-petition payments with respect to this loan.

8.      The unpaid principal balance of this loan as of July 29, 2016 is $62,386.33.

9.      The following chart sets forth those post-petition payments that the Borrowers failed to make with respect to this loan as of July 29, 2016:

| Number of Missed Payments | From | To | Principal and Interest | Escrow (if applicable) | Monthly Payment Amount | Total Amounts |
|---|---|---|---|---|---|---|
| 4 | 9/13/2013 | 12/13/2013 | $834.85 | $233.69 | $1,068.54 | $4,274.16 |
| 12 | 1/13/2014 | 12/13/2014 | $834.85 | $244.52 | $1,079.37 | $12,952.44 |
| 12 | 1/13/2015 | 12/13/2015 | $834.85 | $244.46 | $1,079.31 | $12,951.72 |
| 7 | 1/13/2016 | 7/13/2016 | $834.85 | $297.54 | $1,132.39 | $7,926.73 |
| Less post-petition partial payments (suspense balance): | | | | | | $(259.20) |

Total:   $37,845.85

In addition, monthly payment obligations will continue to accrue under the terms of the note.

10.     As of July 29, 2016, the total post-petition arrearage/delinquency needed to cure the post-petition default is $37,845.85, consisting of (i) the foregoing total of missed post-petition payments in the amount of $37,845.85, plus (ii) the following post-petition fees:

| Description | Amount |
|---|---|
| N/A | $0.00 |

11.     Attached hereto as Exhibit A is a postpetition payment history.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 25th day of August 2016.

Name: Amanda Schleich

Title:       Vice President      JPMorgan Chase Bank, N.A.,

8/25/16

EXHIBIT A

EXHIBIT A

EXHIBIT A

| Avg. Days/Month | 30.42 |
|---|---|
| Interest From | 2/13/2012 |
| Interest To | 7/30/2016 |
| UPB | $62,386.33 |
| Interest Rate | 14.250% |
| Number of Days | 1629.00 |
| Amount Per Day | $24.35 |
| Interest amount | $39,666.15 |
| UPB + interest | $102,052.48 |

REturn to:
Ward & Teasley, P. C.
5775-D Peachtree Dunwoody Rd., Ste 175
Atlanta, GA   30342
S-02-53

_____[Space Above This Line For Recording Data]_____

# DEED TO SECURE DEBT

THIS DEED TO SECURE DEBT ("Security Instrument") is given on __February 8__, 199__5__. The grantor is ___Greg Almond and Jocelyn Almond___ ("Borrower"). This Security Instrument is given to _____ __Sunshine Mortgage Corporation_____, grantee, which is organized and existing under the laws of ___State of Georgia___, and whose address is _____ __P O Box 9274, Marietta, GA   30065__
("Lender"). Borrower owes Lender the principal sum of __**Sixty Nine Thousand Three Hundred and No/100----------------------************************__ Dollars
(U.S. $__69,300.00__). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments with the full debt, if not paid earlier, due and payable on __February 13, 2010__. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at the rate set forth in the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 6 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes Borrower does hereby grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in _____Douglas_____ County, Georgia:

☒   If this box is checked see Schedule A annexed hereto and made a part hereof.

which has the address of __9914 Scarlet Oak Drive__, __Douglasville__
Georgia   __30135__   ("Property Address"):
(Zip Code)

TO HAVE AND TO HOLD this property unto Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands subject to any encumbrances of record.

Borrower and Lender covenant and agree as follows:

1.      **Payment of Principal, Interest and Other Charges.** Subject to paragraph 10 below, Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any late charges, collection costs and expenses and dishonored check charges as provided in the Note.

2.      **Application of Payments.** Unless applicable law provides otherwise, Lender will apply each of Borrower's payments under the Note first to accrued and unpaid interest under the Note to the date of payment and the remainder, if any, to the unpaid principal balance under the Note. Any late charges, collection costs and expenses, dishonored check charges and payments made by Lender to enforce the Note and/or to protect Lender's interests under this Security Instrument will be assessed separately.

EXHIBIT "B"

# BALLOON NOTE

GEORGIA

THE FINAL PAYMENT UNDER THIS NOTE IS SUBSTANTIALLY GREATER THAN THE PREVIOUS PAYMENTS. YOU MUST REPAY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

US $ _69,300.00_

February 8, 1995
Date

_9914 Scarlet Oak Drive , Douglasville, GA    30135_
(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $_69,300.00_ (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is ___Sunshine Mortgage Corporation___. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on the unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of __14.250__ %. Interest will be charged until the principal has been paid in full.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

I will pay principal and interest by making payments every month. Each of my monthly payments, except for the final payment, will be in the amount of U.S. $_834.85_. Assuming all scheduled payments of principal and interest are made on their due dates, the final payment will be U.S. $ 62738.34

I will make my monthly payments on the __13th__ day of each month beginning on March 13, 19 _95_. I will make these payments every month until __February 13, 2010__, which date I will pay all of the remaining principal, accrued interest and any other charges, described below, that I may owe under this Note. Unless applicable law provides otherwise, all payments will be applied first to accrued and unpaid interest to the date of payment and the remainder, if any, to the unpaid principal balance. Any late charges, collection costs and expenses, dishonored check charges and payments made by the Note Holder to enforce this Note and/or to protect the Note Holder's interests under the Security Instrument (as defined in section 9) will be assessed separately.

I will make my monthly payments at _P. o. Box 9274, Marietta, GA   30065_, or at a different place if required by the Note Holder.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment."

I may make a full prepayment or partial prepayments without paying any prepayment penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there

EXHIBIT-2

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## OF LOAN SECURED BY REAL PROPERTY

| LENDER (called "you"): | BORROWER(S) (called "I," "me" or "my"): |
|---|---|
| Sunshine Mortgage Corporation<br>P O Box 9274<br>Marietta, GA 30065 | Greg Almond<br>Jocelyn Almond |

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed. The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 14.874 % | $ 145611.99 | $ 66564.50 | $ 212176.49 |

My payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due | |
|---|---|---|---|
| 179 | $ 834.85 | Monthly beginning | March 13, 1995 |
| 1 | $ 62738.34 | Month Ending February 13, 2010 | |

Insurance: I may obtain required property insurance from anyone I want that is acceptable to you.

Security: I am giving a security interest in my real property located at:_____, Douglasville, GA 30135

Filing Fees: $ 50.00
$ 6.00 e (For releasing security interest)

Prepayment: If I pay off early, I

☐ may ☒ will not have to pay a penalty.

Late Charge: If a payment is late more than 15 calendar days, I will pay a late charge of 5.00% of my scheduled payment.

Assumption: Someone buying my home cannot, except as federal law otherwise provides, assume the remainder of this loan on the original terms.

See the contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties and security interest.

e means estimate

Itemization of Amount Financed of $ 66564.50

| $ (858.76) | Amount given to me directly. |
|---|---|
| $_____ | Amount paid on my account. |

Amounts paid to others on my behalf:

| $ 50.00 | to public officials for filing fees. |
|---|---|
| $ 338.60 | to insurance company for title insurance and/or title search. |
| $ 400.00 | to Ward & Teasley, P.C. , closing attorney/agent. |
| $_____ | to credit bureau for credit reporting fees. |
| $_____ | to insurance company for credit life insurance. |
| $_____ | to appraiser for appraisal fees. |

(Specify name of payee and purpose)

| $ 208.50 | to Tax Commissioner |
|---|---|
| $ 6.50 | to Ga Res Mtg Ln Fee |
| $ 75.00 | to Appraisal Review |
| $ 31774.79 | to GMAC Mortgage Corp |
| $ 26580.87 | to Douglas County Bank |
| $ 710.00 | to NATCO |
| $ 6388.00 | to GMAC |
| $ 391.00 | to Macys |
| $ 500.00 | to Personal Finance |
| $_____ | to |
| $ 2735.50 | Prepaid finance charge including: |

$ 2425.50 for loan origination fee to you. $1039.50 Orig, $1386.00 Ln Disc

EXHIBIT "D"



**Superior Bank** ℠ FSB

Servicing Division

# MORTGAGE STATEMENT

**STATEMENT DATE:** 07/24/00
Any activity after this date will
appear on the next billing statement.

ACCOUNT NUMBER:
PROPERTY ADDRESS

## ACCOUNT INFORMATION

| Item Description | Amount |
|---|---|
| **Balances** | |
| Principal Balance | $68,307.64 |
| Escrow Balance | $0.00 |
| Unpaid Late Charges • | $125.22 |
| Unpaid NSF Charges | $0.00 |
| Negative Amortization Balance | $0.00 |
| Deferred Amounts | $0.00 |
| **Payment Factors** | |
| Principal & Interest Payment | $834.85 |
| Escrow Payment | $0.00 |
| Optional Products | $0.00 |
| Other | $0.00 |
| Total Payment | $834.85 |
| **Year-To-Date** | |
| Interest Paid | $5,935.95 |
| Taxes Paid | $0.00 |

002926

GREG   ALMOND
JOCELYN  ALMOND

• If your loan closed before April 30, 1997, the amount of late charges
you owe may be different than this amount. If you wish to obtain
the actual amount of late charges owed, please call our
Customer Service Department.

PLEASE NOTE: The amounts reflected in this statement
do not represent a payoff quote. For a payoff quote,
please call our Customer Service Department.

**Important Messages**          **Toll Free Customer Service 1-888-323-6111**

## Need an Auto Loan, or want to lower your existing car payment?  Let us help you!

## Call 800-DIAL-CAR (342-5227)

## Transaction Summary

| Date | Description | Amount | Interest | Principal | Escrow/Impound | Optional Products | Miscellaneous |
|---|---|---|---|---|---|---|---|
| 06/24 | Begin Date | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

EXHIBIT "E"

# Superior Bank FSB
Servicing Division
One Ramland Road, Orangeburg, NY 10962

**Toll Free Customer Service**
1-888-323-6111

3100MS 07/24/01  08:51    0000697 10/01/01 SUPMT301 SUP-MORT 1 OUNCE  0916200125~

GREG  ALMOND
JOCELYN  ALMOND

**MORTGAGE STATEMENT**
Statement Date  09/28/01
Loan Summary

ACCOUNT NUMBER:
PROPERTY ADDRESS:

**Balances**

| | |
|---|---|
| Principal Balance: | 67442.25 |
| Escrow Balance: | .00 |
| Unpaid Late Charges: | 41.74 |
| Unpaid NSF Charges: | 15.00 |
| Funds Advanced By Superior Bank: | .00 |

**Payment Breakdown**

| | |
|---|---|
| Principal & Interest Payment: | 834.85 |
| Escrow Payment: | .00 |
| Optional Products: | .00 |
| Other: | .00 |
| Total Payment: | 834.85 |
| Year-To-Date: | |
| Interest Paid: | 7513.80 |
| Taxes Paid: | .00 |

**IMPORTANT NOTICE:** This Loan Summary is being provided to you for informational purposes only. The principal balance indicated above is not the total amount required to pay your loan in full.

## TRANSACTION SUMMARY

| Date | Description | Amount | Interest | Principal | Escrow/Impound | Optional Products | Miscellaneous |
|---|---|---|---|---|---|---|---|
| 08/28/01 | LAST STATEMENT | .00 | .00 | .00 | .00 | .00 | .00 |
| 09/28/01 | INT PAYMENT | .15 | .15 | .00 | .00 | .00 | .00 |
| 09/28/01 | PAYMENT | 834.85 | 834.85 | .00 | .00 | .00 | .00 |
| 09/18/01 | PAYMENT | 834.85 | 834.85 | .00 | .00 | .00 | .00 |
| 08/30/01 | EZ PAY FEE | 4.95 | .00 | .00 | .00 | .00 | 4.95 |
| 08/30/01 | PAYMENT | 834.85 | 834.85 | .00 | .00 | .00 | .00 |
| 08/30/01 | PAYMENT REVERSE | 834.85- | 834.85- | .00 | .00 | .00 | .00 |
| 08/30/01 | PAYMENT REVERSE | 834.85- | 834.85- | .00 | .00 | .00 | .00 |
| 08/30/01 | EZ PAY FEE | 4.95 | .00 | .00 | .00 | .00 | 4.95 |
| 08/30/01 | PAYMENT | 834.85 | 834.85 | .00 | .00 | .00 | .00 |

## IMPORTANT MESSAGES

02-1x09-3100(3/01)

# Superior Bank FSB
Servicing Division

Loan Number:
GREG  ALMON

| | |
|---|---|
| Past Due Payment(s) Since 00/00/00: | .00 |
| Next Payment Due 10/13/01: | 834.85 |
| Outstanding Fees:  Late: | 41.74 |
| Check Return(NSF): | 15.00 |
| Other Fees: | 4.95 |
| Total Payments and Fees Due: | 896.54 |
| Funds Advanced By Superior Bank: | .00 |
| Total Amount Due: | 896.54 |
| After 10/23/01: Add Late Fee of | 41.74 |

**PAYMENT COUPON**

| | |
|---|---|
| Additional Principal: | _____ |
| Additional Escrow: | _____ |
| Other: | _____ |
| Total Amount Enclosed: | _____ |

*Please specify application of additional funds. Amounts specified as principal reduction may be applied to past due payments or advances made by Superior Bank on your behalf.

Please make all checks payable to:

SUPERIOR BANK FSB
PO BOX 9597
UNIONDALE NY  11555-9597

EXHIBIT "F"

0660673757  083485  101301  089654  102301  2



PAGE 1 OF 1

**EMC** Mortgage Corporation
*Proven Performance*

P.O. Box 141358
Irving, TX 75014-1358

## BILLING STATEMENT



Statement Date
Loan Number:

☎ **Automated Information Line:**
1-800-723-3004

▭ **Visit our Web Site:**
www.emcmortgageservicing.com

☐ Check here if your address or phone numbers have changed and complete the form on the reverse side.

92382-003406-001

GREG ALMOND
JOCELYN ALMOND

Borrower's Name:   GREG ALMOND
                              JOCELYN ALMOND

PROPERTY ADDRESS:

## ACCOUNT INFORMATION

| | |
|---|---|
| Loan Number | |
| Interest Rate | |
| Current Principal Balance* | 66,019.01 |
| Current Escrow Balance | 241.60 |
| Year-to-Date Interest Paid | 9,861.18 |
| Year-to-Date Taxes Paid | 0.00 |
| Year-to-Date Principal Paid | 157.02 |
| Year-to-Date Hazard Insurance Paid | 437.00 |
| Late Charge Fee (per month) | 11.74 |

## PAYMENT SUMMARY

| | |
|---|---|
| Payment Due Date | 12/13/05 |
| Principal & Interest | 834.85 |
| Escrow Payment | 39.92 |
| Optional Products | 0.00 |
| Total Past Due | 874.77 |
| Unpaid Late Charges | 358.88 |
| Other Fees | 0.00 |
| Total Amount Due | 2,108.42 |

*is your Principal Balance only, not the amount required to pay your loan in full.

## ACCOUNT ACTIVITY

| TRANSACTION DESCRIPTION | DUE DATE | TRANSACTION DATE | TOTAL RECEIVED | PRINCIPAL | OPTIONAL PRODUCTS | INTEREST | ESCROW | OTHER |
|---|---|---|---|---|---|---|---|---|
| Payment | 11/05 | 12/15 | 874.77 | 157.02 | .00 | 677.83 | 39.92 | .00 |
| Payment | 12/05 | 12/15 | 9.95 | .00 | .00 | .00 | .00 | 9.95 |

### IMPORTANT MESSAGES

Your year-end 1098 IRS information will be available through our website at emcmortgageservicing.com and the automated system on January 5, 2006. The 1098 form will be mailed by January 31, 2006.

EMC is writing regarding the collection of your loan, and any information obtained will be used for that purpose.

*EXHIBIT "G"*



# EMC
*Mortgage Corporation*

P.O. Box 141358
Irving, TX 75014-1358

## BILLING STATEMENT

**Statement Date:** 12/15/06
**Loan Number:**

☎ **Automated Information Line:**
1-800-723-3004

🖥 **Visit our Web Site:**
www.emcmortgageservicing.com

69261-0015292-004

GREG ALMOND
JOCELYN ALMOND

☐ Check here if your address or phone numbers have changed and complete the form on the reverse side.

PROPERTY ADDRESS:

## ACCOUNT INFORMATION

| | |
|---|---|
| Loan Number | 0007136120 |
| Interest Rate | 14.2500% |
| Current Principal Balance* | 65,132.83 |
| Current Escrow Balance | 198.58 |
| Year-to-Date: Principal Paid | 836.16 |
| Year-to-Date: Interest Paid | 9,143.78 |
| Year-to-Date: Taxes Paid | 0.00 |
| Year-to-Date: Hazard Insurance Paid | 409.00 |
| Late Charge Fee (per month) | 41.74 |

*This is your Principal Balance only, not the amount required to pay your loan in full.

## PAYMENT SUMMARY

| | |
|---|---|
| Payment Due Date | 12/13/06 |
| Principal & Interest | $834.85 |
| Escrow Payment | 36.42 |
| Total Past Due | 871.27 |
| Late Charge | 624.59 |
| Returned Check Fee | 30.00 |
| Speedpay Fee | 9.95 |
| Total Amount Due | 2,407.08 |

## IMPORTANT MESSAGES

**Your mortgage payment for the current month has not been received. A late charge has been assessed. Please remit the total amount due to reinstate your account. If you cannot remit the total amount due, please contact our office at 1-800-436-7397.**

EMC is writing regarding the collection of your loan, and any information obtained will be used for that purpose.

We have reviewed the items included in the total amount of advances made by your previous servicer that carried over when your loan transferred to EMC. For your convience, we have initialized these amounts as shown in the Account Activity.

Your year-end 1098 IRS information will be available through our website at www.emcmortgageservicing.com and the automated system on January 2, 2007. The 1098 form will be mailed by January 31, 2007.

Your monthly billing statement is new and improved, giving you more information about your account.

**BEAR STEARNS** RESIDENTIAL MORTGAGE

Tis the Season with great savings from a Bear Stearns Residential Mortgage Corporation Refinance. Call a Mortgage Refinance Specialist at 1-866-638-BEAR today!

## ACCOUNT ACTIVITY

| TRANSACTION DESCRIPTION | DUE DATE | TRAN DATE | TOTAL RECEIVED | PRINCIPAL | INTEREST | ESCROW | OPTIONAL PRODUCTS | OTHER | SUSPENSE |
|---|---|---|---|---|---|---|---|---|---|
| Prior Svcr Adv Bal | 12/08 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 35.05 | 0.00 |
| Late Charge | | 11/24 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 41.74 | 0.00 |
| Payment | 11/06 | 12/14 | 881.22 | 0.00 | 834.85 | 36.42 | 0.00 | 9.95 | 0.00 |

*EXHIBIT*

PLEASE DETACH AND RETURN BOTTOM PORTION WITH PAYMENT IN THE ENCLOSED ENVELOPE



**EMC**
*Mortgage Corporation*

P.O. Box 293150
Lewisville, TX 75029-3150

## BILLING STATEMENT

**Statement Date:** 11/16/07
**Loan Number:**

 **Automated Information Line:**
1-800-723-3004

 **Visit our Web Site:**
www.emcmortgageservicing.com

 **Pay by Phone:**
1-877-472-9362 or 1-866-472-9362
*Pay by phone at no cost!*

☐ Check here if your address or phone numbers have changed and complete the form on the reverse side.

45347-0001880-001

GREG ALMOND
JOCELYN ALMOND

PROPERTY ADDRESS:

## ACCOUNT INFORMATION

| | |
|---|---|
| Loan Number | |
| Interest Rate | 14.2500% |
| Current Principal Balance* | 63,785.35 |
| Current Escrow Balance | 129.32 |
| Year-to-Date Principal Paid | 1,397.48 |
| Year-to-Date Interest Paid | 8,620.72 |
| Year-to-Date Taxes Paid | 0.00 |
| Year-to-Date Hazard Insurance Paid | 574.00 |
| Late Charge Fee (per month) | 41.74 |

*This is your Principal Balance only, not the amount required to pay your loan in full.

## PAYMENT SUMMARY

| | |
|---|---|
| Payment Due Date | 12/13/07 |
| Principal & Interest | $834.85 |
| Escrow Payment | 43.39 |
| Late Charge | 703.02 |
| Speedpay Fee | 9.95 |
| Total Amount Due | 1,591.21 |

## IMPORTANT MESSAGES

NEW EXPANDED CUSTOMER SERVICE HOURS 7 AM to 11 PM and Fridays 7 AM to 7 PM Central Standard Time.

Nuevo horas de servicio extendidas para el departamento de Servicio al Cliente son, 7:00 a.m. a 11:00 p.m. lunes a jueves y viernes 7:00 a.m. a 7:00 p.m. hora Central.

**IMPORTANT YEAR-END INFORMATION**

In order for us to report your deductible mortgage interest paid in 2007, the Internal Revenue Service (IRS) requires that you furnish your Social Security Number(s) to us. Failure to provide this information may result in a $50 penalty assessed by the IRS. Please take a moment to update the W9 Certification form on the back of your monthly mortgage statement and return it with your mortgage payment. Or contact our Customer Service Department at 1-800-723-3004.

**BEAR STEARNS** | RESIDENTIAL MORTGAGE

Are you up against an interest rate increase? **Turn to us!**
Step into an FHA*Secure* mortgage today from Bear Stearns Residential Mortgage.
Call **1-866-658-BEAR** or visit us online at https://www.beardirect.net/retention.

## ACCOUNT ACTIVITY

| TRANSACTION DESCRIPTION | DUE DATE | TRAN DATE | TOTAL RECEIVED | PRINCIPAL | INTEREST | ESCROW | OPTIONAL PRODUCTS | OTHER | SUSPENSE |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 11/07 | 11/16 | 878.24 | 0.00 | 834.85 | 43.39 | 0.00 | 0.00 | 0.00 |

675-2064-0907F

*EXHIBIT – "I"*

PAGE 1 OF 1

# EMC
### Mortgage Corporation

RETURN SERVICE ONLY
Please do not send mail to this address
PO Box 619063
Dallas, TX 75261-9063



| BILLING & SPEEDPAY CONFIRMATION STATEMENT | |
| --- | --- |
| Statement Date: | 11/13/08 |
| Loan Number: | |



6-675-35281-0004561-001-1-000-010-000-000

GREG ALMOND
JOCELYN ALMOND

 **Automated Information Line:**
1-800-723-3004

**Visit our Web Site:**
www.emcmortgageservicing.com

 **Pay by Phone:**
1-877-472-9362 or 1-866-472-9362
*Fees may apply*

☐ Check here if your address or phone numbers have changed
and complete the form on the reverse side.

PROPERTY
ADDRESS:

## ACCOUNT INFORMATION

| | |
| --- | --- |
| Loan Number | |
| Interest Rate | 14.2500% |
| Current Principal Balance* | 62,808.25 |
| Current Escrow Balance | 214.40 |
| Year-to-Date: Principal Paid | 977.10 |
| Year-to-Date: Interest Paid | 8,206.25 |
| Year-to-Date: Taxes Paid | 0.00 |
| Year-to-Date: Hazard Insurance Paid | 579.00 |
| Late Charge Fee (per month) | 41.74 |

*This is your Principal Balance only, not the amount required to pay your loan in full.

## PAYMENT SUMMARY

| | |
| --- | --- |
| Payment Due Date | 12/13/08 |
| Principal & Interest | $834.85 |
| Escrow Payment | 57.73 |
| Late Charge | 828.24 |
| Speedpay Fee | 9.95 |
| Total Amount Due | 1,730.77 |

## IMPORTANT MESSAGES

**SPEEDPAY CONFIRMATION**

This statement serves as confirmation of your Speedpay payment made on 11/03/08. The confirmation number for this transaction is 0005517918. Funds were withdrawn from Douglas County Bank, bank account number ending in ***9042. Please retain this statement for your records.

Your mortgage payment for the current month has not been received. A late charge has been assessed. Please remit the total amount due to reinstate your account. If you cannot remit the total amount due, please contact our office at 1-800-436-7397.

## ACCOUNT ACTIVITY

| TRANSACTION DESCRIPTION | DUE DATE | TRAN DATE | TOTAL AMOUNT | PRINCIPAL | INTEREST | ESCROW | OPTIONAL PRODUCTS | OTHER | SUSPENSE |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Late Charge | 10/23 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 41.74 | 0.00 |
| Payment | 10/08 | 11/13 | 1,785.16 | 0.00 | 834.85 | 57.73 | 0.00 | 0.00 | 0.00 |
| Payment | 11/08 | 11/13 | 0.00 | 293.87 | 540.98 | 57.73 | 0.00 | 0.00 | 0.00 |
| Payment | 12/08 | 11/13 | 0.00 | 0.00 | 0.00 | 57.73 | 0.00 | 0.00 | 0.00 |
| Speedpay Fee | | 11/13 | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | 0.00 |
| Speedpay Fee | | 11/13 | -10.00 | 0.00 | 0.00 | 0.00 | 0.00 | -10.00 | 0.00 |
| Speedpay Fee | | 11/13 | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | 0.00 |

*EXHIBIT - "3"*

PAGE 1 OF 2



**EMC**
*Mortgage Corporation*

RETURN SERVICE ONLY
Please do not send mail to this address
PO Box 619063
Dallas, TX 75261-9063

## BILLING STATEMENT

**Statement Date:** 06/05/09
**Loan Number:**~



 9-675-92763-0000011-001-1-000-010-000-000

GREG ALMOND
JOCELYN ALMOND



 **Automated Information Line:**
1-800-723-3004

**Visit our Web Site:**
www.emcmortgageservicing.com

 **Pay by Phone:**
1-877-472-9362 or 1-866-472-9362
Fees may apply

☐ Check here if your address or phone numbers have changed
and complete the form on the reverse side.

### ACCOUNT INFORMATION

| | |
|---|---|
| Payment Due Date | 05/13/09 |
| Interest Rate | 14.2500% |
| Current Principal Balance* | 62,508.51 |
| Current Escrow Balance | -1,089.39 |
| Year-to-Date Principal Paid | 299.74 |
| Year-to-Date Interest Paid | 3,674.51 |
| Year-to-Date Taxes Paid | 1,376.78 |
| Year-to-Date Hazard Insurance Paid | 0.00 |
| Late Charge Fee (per month) | 41.74 |

*This is your Principal Balance only, not the amount required to pay your loan in full.

### AMOUNT DUE SUMMARY

| | |
|---|---|
| Principal & Interest | $834.85 |
| Escrow Payment | 48.92 |
| **Current Payment Amount Due** | **$883.77** |
| Past Payment Amount Due | 883.77 |
| **Total Payment Amount Due** | **1,767.54** |
| Late Charge | 1,031.97 |
| Speedpay Fee | 9.95 |
| **Total Fee Amount Due** | **$1,041.92** |
| Outstanding Advances Due from Borrower | 18.00 |
| Escrow Advance Balance | $1,089.39 |
| **Total Outstanding Advances Due From Borrower** | **$1,107.39** |

Please Note: Monies may not be applied as you instruct if the Note and Security Instrument provide for different application of funds.

### IMPORTANT MESSAGES

Your mortgage payment for the current month was not received on time. A late charge has been assessed. If you have not already done so, please remit the total amount due to reinstate your account. If you cannot remit the total amount due, please contact our office at 1-800-436-7397.

EMC is writing regarding the collection of your loan, and any information obtained will be used for that purpose.

### PAYMENT ACTIVITY

| TRANSACTION DESCRIPTION | DUE DATE | TRAN DATE | TOTAL AMOUNT | PRINCIPAL | INTEREST | ESCROW | OPTIONAL PRODUCTS | OTHER | SUSPENSE |
|---|---|---|---|---|---|---|---|---|---|
| Reversal | 12/08 | 01/14 | 0.00 | 0.00 | -369.96 | -57.78 | 0.00 | 1,427.69 | 0.00 |
| Reversal | 01/09 | 01/08 | 0.00 | 0.00 | -342.27 | -57.73 | 0.00 | 0.00 | -900.00 |
| Payment | 12/08 | 01/08 | 0.00 | 0.00 | 834.85 | 48.92 | 0.00 | 0.00 | 0.00 |
| Payment | 01/09 | 01/08 | 0.00 | 299.74 | 536.41 | 48.92 | 0.00 | -1,767.54 | 0.00 |
| Reversal | 02/09 | 03/07 | 0.00 | 0.00 | -834.85 | -65.15 | 0.00 | 0.00 | 900.00 |
| Payment | 02/09 | 03/07 | 0.00 | 0.00 | 834.85 | 48.92 | 0.00 | 0.00 | 900.00 |
| Reversal | 03/09 | 04/16 | 0.00 | 0.00 | -834.85 | -65.15 | 0.00 | 0.00 | 900.00 |
| Payment | 03/09 | 04/16 | 0.00 | 0.00 | 834.85 | 48.92 | 0.00 | 0.00 | 900.00 |
| Payment | 04/09 | 04/30 | 0.00 | 0.00 | 834.85 | 65.15 | 0.00 | 0.00 | 900.00 |
| Late Charge | | 05/25 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 900.00 |
| Late Charge | | 05/25 | -41.74 | 0.00 | 0.00 | 0.00 | 0.00 | 41.74 | 0.00 |
| Late Charge | | 06/05 | -344.82 | 0.00 | 0.00 | 0.00 | 0.00 | 41.74 | 0.00 |
| Escrow Advance | | 06/04 | 213.29 | 0.00 | 0.00 | 213.29 | 0.00 | -344.82 | 0.00 |
| Mind Esc Adv | | 06/04 | 0.00 | 0.00 | 0.00 | -48.92 | 0.00 | 0.00 | 0.00 |
| June Esc Adv | | 06/04 | 0.00 | 0.00 | 0.00 | 48.92 | 0.00 | 0.00 | 0.00 |
| Late Charge Adj | | 06/04 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 41.74 | 0.00 |
| Refund Esc Adv | | 06/04 | 0.00 | 0.00 | 0.00 | -65.15 | 0.00 | 0.00 | 0.00 |
| Refund Esc Adv | | 06/04 | 0.00 | 0.00 | 0.00 | 65.15 | 0.00 | 0.00 | 0.00 |

(Continued on the following page)

EXHIBIT K

 **EMC**
*Mortgage Corporation*

RETURN SERVICE ONLY
Please do not send mail to this address
PO Box 619063
Dallas, TX 75261-9063



| **INFORMATION STATEMENT** |
|---|

**Statement Date:** ___ 11/30/10
**Loan Number:** ▆▆▆▆▆

 3-675-49235-0004043-001-1-000-010-000-000

GREG ALMOND
JOCELYN ALMOND



**Account
Inquiries
1-866-325-4316**

☐ Check here if your address or phone numbers have changed and complete the form on the reverse side.

## ACCOUNT INFORMATION

| | |
|---|---|
| Loan Number | ▆▆▆▆ |
| Interest Rate | 14.25000% |
| Current Principal Balance* | 62,386.33 |
| Current Escrow Balance | ($4,954.96) |
| Year-to-Date: Principal Paid | 0.00 |
| Year-to-Date: Interest Paid | 0.00 |
| Year-to-Date: Taxes Paid | 1,809.43 |
| Year-to-Date: Hazard Insurance Paid | 845.99 |
| Late Charge Fee (per month) | 41.74 |

*This is your Principal Balance only, not the amount required to pay your loan in full.

## PAYMENT SUMMARY

| | |
|---|---|
| Bankruptcy Chapter | 13 |
| Post-Petition Due Date | 11/13/10 |
| Post-Petition Payment Amount | $1,186.70 |
| **For information purposes only:** | |
| Contractual Due Date | 11/13/09 |

## IMPORTANT MESSAGES

Your statement may contain multiple charges for property inspections. Please note that property inspections appear on your billing statement at the time they are assessed to your loan and not at the time they were performed. Property inspections are performed in accordance with your Security Instrument.

To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this statement is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. If your Plan requires you to make post-petition mortgage payments directly to the Trustee, any such payments should be remitted to the Trustee directly in accordance with the orders of the Bankruptcy Court.

If you do not wish to receive this monthly Information Statement in the future, or if you have any questions regarding this mortgage/deed of trust account, please call 1-866-325-4316.

Please refer to the bankruptcy information included with this statement for additional information relating to your case.

Your loan will reach its maturity on 02/10 and any remaining balances must be paid in full.

## ACCOUNT ACTIVITY

| TRANSACTION DESCRIPTION | DUE DATE | TRAN DATE | TOTAL AMOUNT | PRINCIPAL | INTEREST | ESCROW | OPTIONAL PRODUCTS | OTHER | SUSPENSE |
|---|---|---|---|---|---|---|---|---|---|
| Property Valuation | 10/12 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 78.00 | 0.00 |
| Inspection Fee | 10/20 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 9.00 | 0.00 |
| Fcl Attorney Fee | 11/02 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 540.00 | 0.00 |
| Fcl Attorney Cost | 11/02 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 11.42 | 0.00 |
| Fcl Attorney Cost | 11/02 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 380.00 | 0.00 |
| Fcl Attorney Cost | 11/02 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 225.00 | 0.00 |
| Cnty Tax | 09/27 | | -1,809.43 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Escrow Advance | 09/27 | | 1,809.43 | 0.00 | 0.00 | 1,809.43 | 0.00 | 0.00 | 0.00 |

*EXHIBIT - "L"*

ORU

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

In re:

    GREGORY LAMAR ALMOND

        Debtor(s)

Case No. A13-68985-MGD

## CHAPTER 13 STANDING TRUSTEE'S FINAL REPORT AND ACCOUNT

    Mary Ida Townson, chapter 13 trustee, submits the following Final Report and Account of the administration of the estate pursuant to 11 U.S.C. § 1302(b)(1). The trustee declares as follows:

1) The case was filed on 08/30/2013.

2) The plan was confirmed on 01/10/2014.

3) The plan was modified by order after confirmation pursuant to 11 U.S.C. § 1329 on NA.

4) The trustee filed action to remedy default by the debtor in performance under the plan on 04/22/2016, 03/04/2017.

5) The case was dismissed on 03/06/2017.

6) Number of months from filing to last payment: 39.

7) Number of months case was pending: 43.

8) Total value of assets abandoned by court order: NA.

9) Total value of assets exempted: $27,981.00.

10) Amount of unsecured claims discharged without payment: $0.00.

11) All checks distributed by the trustee relating to this case have cleared the bank.

UST Form 101-13-FR-S (9/1/2009)

EXHIBIT - "M" (3 PGS.)

## Receipts:

| | | |
|---|---|---|
| Total paid by or on behalf of the debtor | $57,453.00 | |
| Less amount refunded to debtor | $0.00 | |
| **NET RECEIPTS:** | | **$57,453.00** |

## Expenses of Administration:

| | |
|---|---|
| Attorney's Fees Paid Through the Plan | $3,900.00 |
| Court Costs | $0.00 |
| Trustee Expenses & Compensation | $2,863.88 |
| Other | $0.00 |
| **TOTAL EXPENSES OF ADMINISTRATION** | **$6,763.88** |

Attorney fees paid and disclosed by debtor:          $0.00

## Scheduled Creditors:

| Creditor Name | Class | Claim Scheduled | Claim Asserted | Claim Allowed | Principal Paid | Int. Paid |
|---|---|---|---|---|---|---|
| GEORGIA DEPT OF REVENUE | Unsecured | 0.00 | 231.81 | 231.81 | 0.00 | 0.00 |
| INTERNAL REVENUE SERVICE | Unsecured | NA | 1,483.73 | 1,483.73 | 0.00 | 0.00 |
| INTERNAL REVENUE SERVICE | Priority | 0.00 | 2,936.36 | 2,936.36 | 1,632.19 | 0.00 |
| JPMORGAN CHASE BANK, N.A. | Secured | 53,823.54 | 53,638.71 | 53,638.71 | 47,445.43 | 0.00 |
| WELLS FARGO BANK, N.A. | Secured | 4,269.00 | 0.00 | 1,485.82 | 1,485.82 | 125.68 |

**UST Form 101-13-FR-S (9/1/2009)**

**Summary of Disbursements to Creditors:**

|  | Claim Allowed | Principal Paid | Interest Paid |
|---|---|---|---|
| **Secured Payments:** | | | |
| Mortgage Ongoing | $0.00 | $0.00 | $0.00 |
| Mortgage Arrearage | $53,638.71 | $47,445.43 | $0.00 |
| Debt Secured by Vehicle | $1,485.82 | $1,485.82 | $125.68 |
| All Other Secured | $0.00 | $0.00 | $0.00 |
| **TOTAL SECURED:** | **$55,124.53** | **$48,931.25** | **$125.68** |
| **Priority Unsecured Payments:** | | | |
| Domestic Support Arrearage | $0.00 | $0.00 | $0.00 |
| Domestic Support Ongoing | $0.00 | $0.00 | $0.00 |
| All Other Priority | $2,936.36 | $1,632.19 | $0.00 |
| **TOTAL PRIORITY:** | **$2,936.36** | **$1,632.19** | **$0.00** |
| **GENERAL UNSECURED PAYMENTS** | **$1,715.54** | **$0.00** | **$0.00** |

**Disbursements:**

| | |
|---|---|
| Expenses of Administration | $6,763.88 |
| Disbursements to Creditors | $50,689.12 |
| **TOTAL DISBURSEMENTS:** | **$57,453.00** |

    12)  The trustee certifies that, pursuant to Federal Rule of Bankruptcy Procedure 5009,
the estate has been fully administered, the foregoing summary is true and complete, and all
administrative matters for which the trustee is responsible have been completed. The trustee
requests a final decree be entered that discharges the trustee and grants such other relief as may
be just and proper.

Dated: 03/22/2017                         By: /s/ Mary Ida Townson
                                          _____
                                                        Trustee

STATEMENT: This Unified Form is associated with an open bankruptcy case, therefore, Paperwork Reduction Act
exemption 5 C.F.R. § 1320.4(a)(2) applies.

UST Form 101-13-FR-S (9/1/2009)

# Claim Detail

 NATIONAL DATA CENTER

Case **1368985**   Debtor1   GREGORY LAMAR ALMOND   Trustee   TOWNSON, MARY IDA (ATLANTA, GA)

## CLAIM DETAIL

| | |
|---|---|
| Claim Number | 1 |
| Claim Description | MORTGAGE ARREARAGES |
| Claim Type Code | M |
| Class Type Description | SECURED |
| Class Type Code | S |
| Level | 42 |
| Comment | 12-8-16 order ceasing funding |
| Account Number | 6120 |
| Reference Number | 12000925 |
| UCI | |
| Claim Filed Date | |

## CLAIM AMOUNTS

| | |
|---|---|
| Claim Amount | $53,638.71 |
| Scheduled Amount | $53,823.54 |
| Monthly Payment | $1,517.00 |
| Collateral Value Amount | $0.00 |
| Principal Paid | $47,445.43 |
| Principal Owed | $0.00 |
| Principal Due Amount | $0.00 |
| Interest Rate % | 0.0000 |
| Interest Paid | $0.00 |
| Interest Due Amount | $0.00 |
| Trustee Percent | 0.0000 |

## CREDITOR INFORMATION

| | |
|---|---|
| Creditor Name | JPMORGAN CHASE BANK, N.A. |
| Mailing Address | 3415 VISION DRIVE ATTN: OH4-7142 COLUMBUS, OH 43219 |
| Contact Name | |
| Phone Number | (614) 422-5953 |
| Creditor Number | 10327635 |

## FLAGS

| | |
|---|---|
| No Check Indicator | O |
| Stop Disburse Indicator | |
| Continuing Indicator | |
| Reserve Indicator | |

## PAYMENT HISTORY

| DATE | CHECK NUMBER | NAME OF PARTY | DESCRIPTION | PAYMENT AMOUNT | TOTAL |
|---|---|---|---|---|---|
| 12/01/2016 | | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1632.19 | $47,445.43 |
| 11/01/2016 | | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1632.19 | $45,813.24 |
| 10/03/2016 | | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1649.60 | $44,181.05 |
| 09/01/2016 | | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1649.60 | $42,531.45 |
| 08/01/2016 | | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1649.60 | $40,881.85 |
| 07/01/2016 | | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1649.60 | $39,232.25 |
| 06/01/2016 | | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1649.60 | $37,582.65 |

EXHIBIT - "N" (2 pgs)

| DATE | CHECK NUMBER | NAME OF PARTY | DESCRIPTION | PAYMENT AMOUNT | TOTAL |
|---|---|---|---|---|---|
| 03/01/2016 | ▆▆▆▆ | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1649.60 | $35,933.05 |
| 02/01/2016 | ▆▆▆▆ | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1649.60 | $34,283.45 |
| 12/01/2015 | ▆▆▆▆ | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1649.60 | $32,633.85 |
| 11/02/2015 | ▆▆▆▆ | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1649.60 | $30,984.25 |
| 10/01/2015 | ▆▆▆▆ | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1680.06 | $29,334.65 |
| 09/01/2015 | ▆▆▆▆ | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1662.66 | $27,654.59 |
| 08/03/2015 | ▆▆▆▆ | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1662.66 | $25,991.93 |
| 07/01/2015 | ▆▆▆▆ | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1662.66 | $24,329.27 |
| 06/01/2015 | ▆▆▆▆ | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1662.66 | $22,666.61 |
| 05/01/2015 | ▆▆▆▆ | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1662.66 | $21,003.95 |
| 04/01/2015 | ▆▆▆▆ | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1662.65 | $19,341.29 |
| 03/02/2015 | ▆▆▆▆ | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1662.67 | $17,678.64 |
| 01/02/2015 | ▆▆▆▆ | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1540.40 | $16,015.97 |
| 11/03/2014 | ▆▆▆▆ | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1540.59 | $14,475.57 |
| 10/01/2014 | ▆▆▆▆ | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1540.66 | $12,934.98 |
| 09/02/2014 | ▆▆▆▆ | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1532.83 | $11,394.32 |
| 08/01/2014 | ▆▆▆▆ | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1533.42 | $9,861.49 |
| 07/01/2014 | ▆▆▆▆ | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1534.90 | $8,328.07 |
| 05/01/2014 | ▆▆▆▆ | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $3077.12 | $6,793.17 |
| 04/01/2014 | ▆▆▆▆ | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $1538.56 | $3,716.05 |
| 03/03/2014 | ▆▆▆▆ | JPMORGAN CHASE BANK, N.A. | AMOUNT DISBURSED TO CREDITOR | $2177.49 | $2,177.49 |

# United States Bankruptcy Court
## Northern District of Georgia

In re   **Gregory Lamar Almond**

Debtor(s)

Case No.   13-68985-MGD

Chapter   **13**

### FIRST AMENDED CHAPTER 13 PLAN

Extension ☒

Composition ☐

You should read this Plan carefully and discuss it with your attorney. **Confirmation of this Plan by the Bankruptcy Court may modify your rights by providing for payment of less than the full amount of your claim, by setting the value of the collateral securing your claim, and/or by setting the interest rate on your claim.**

Debtor or Debtors (hereinafter called "Debtor") proposes this Chapter 13 Plan:

1. **Submission of Income.** Debtor submits to the supervision and control of the Chapter 13 Trustee ("Trustee") all or such portion of future earnings or other future income of Debtor as is necessary for the execution of this Plan.

2. **Plan Payments and Length of Plan.** Debtor will pay the sum of **$1,741.00 Monthly** to Trustee by ☐ Payroll Deduction(s) or by ☒ Direct Payment(s) for the applicable commitment period of **60** months, unless all allowed claims in every class, other than long-term claims, are paid in full in a shorter period of time. The term of this Plan shall not exceed sixty (60) months. *See* 11 U.S.C. §§ 1325(b)(1)(B) and 1325(b)(4). Each pre-confirmation plan payment shall be reduced by any pre-confirmation adequate protection payment(s) made pursuant to Plan paragraph 6(A)(i) and § 1326(a)(1)(C).

The following alternative provision will apply if selected:

☐ IF CHECKED, Plan payments will increase by $__ in month __ upon completion or termination of __.

3. **Claims Generally. The amounts listed for claims in this Plan are based upon Debtor's best estimate and belief.** An allowed proof of claim will be controlling, unless the Court orders otherwise. Objections to claims may be filed before or after confirmation.

4. **Administrative Claims.** Trustee will pay in full allowed administrative claims and expenses pursuant to §507(a)(2) as set forth below, unless the holder of such claim or expense has agreed to a different treatment of its claim.

   (A). **Trustee's Fees.** Trustee shall receive a fee for each disbursement, the percentage of which is fixed by the United States Trustee.

   (B). **Debtor's Attorney's Fees.** Debtor and Debtor's attorney have agreed to a base attorney fee in the amount of $ **3,900.00** for the services identified in the Rule 2016(b) disclosure statement filed in this case. The amount of $ **0.00** was paid prior to the filing of the case. The balance of the fee shall be disbursed by Trustee as follows: (1) Upon the first disbursement of the plan following confirmation of a Plan, the Trustee shall disburse to Debtor's attorney from the proceeds available and paid into the office of the Trustee by Debtor or on Debtor's behalf, up to $ **3,900.00** after the payment of adequate protection payments and administrative fees. The remaining balance of the fees shall be paid up to $ **562.00** per month until the fees are paid in full; (2) If the case is dismissed or converted prior to confirmation of the plan, the Trustee shall pay fees to Debtor's attorney from the proceeds available and paid into the office of the Trustee by Debtor or on Debtor's behalf, all funds remaining, not to exceed $ **3,900.00** , after payment of any unpaid filing fees, Trustee's fees and expenses, and adequate protection payments, if applicable.

   Debtor and Debtor's attorney have further agreed that Debtor's attorney may be paid for "non-base services" as they are performed on an as-needed basis. These "non-base" services and the agreed fee for each are identified in paragraph 7 of the Rule 2016(b) disclosure statement in this case. Upon completion of a "non-base" service, Debtor's attorney may file an application with the Court, serving all parties-in-interest with notice of the application and providing an opportunity to be heard on the matter. If no objection to the application is timely filed, the application will stand approved without further notice or hearing. If the "non-base" fee is approved by the Court, the fee shall be added to the balance of the unpaid base fee in this case and paid in accordance with paragraph (B)(a) above. If the base fee has been paid in full, the fee shall be paid up to **$562.00** per month, and the distributions to creditors shall be reduced pro rata by that amount until the additional fee is paid in full.

1

04.14.08

Best Case Bankruptcy

*EXHIBIT - "O" (5 Pas)*

04025

5. **Priority Claims**.

    (A). **Domestic Support Obligations**.

☒ None. If none, skip to Plan paragraph 5(B).

      (i). Debtor is required to pay all post-petition domestic support obligations directly to the holder of the claim.

      (ii). The name(s) and address(es) of the holder of any domestic support obligation are as follows. *See* 11 U.S.C. §§ 101(14A) and 1302(b)(6).

| -NONE- |
|---|

      (iii). Anticipated Domestic Support Obligation Arrearage Claims

        (a). Unless otherwise specified in this Plan, priority claims under 11 U.S.C. § 507(a)(1) will be paid in full pursuant to 11 U.S.C. § 1322(a)(2). These claims will be paid at the same time as claims secured by personal property, arrearage claims secured by real property, and arrearage claims for assumed leases or executory contracts.

☒ None; or

| (a)<br>Creditor<br>(Name and Address) | (b)<br>Estimated arrearage<br>claim | (c)<br>Projected monthly arrearage<br>payment |
|---|---|---|
| -NONE- | | |

      (b). Pursuant to §§ 507(a)(1)(B) and 1322(a)(4), the following domestic support obligation claims are assigned to, owed to, or recoverable by a governmental unit.

☒ None; or

      Claimant and proposed treatment:    **-NONE-**

    (B). **Other Priority Claims (e.g., tax claims)**. All other allowed priority claims will be paid in full, but will not be funded until after all secured claims, lease arrearage claims, and domestic support claims are paid in full.

| (a)<br>Creditor | (b)<br>Estimated claim |
|---|---|
| Georgia Department of Revenue | 232.00 |
| Internal Revenue Service | 2,937.00 |

6. **Secured Claims**.

    (A). **Claims Secured by Personal Property Which Debtor Intends to Retain**.

      (i). **Pre-confirmation adequate protection payments.** No later than 30 days after the date of filing of this plan or the order for relief, whichever is earlier, the Debtor shall make the following adequate protection payments to creditors pursuant to § 1326(a)(1)(C). If the Debtor elects to make such adequate protection payments on allowed claims to the Trustee pending confirmation of the plan, the creditor shall have an administrative lien on such payment(s), subject to objection. If Debtor elects to make such adequate protection payments directly to the creditor, Debtor shall provide evidence of such payment to the Trustee, including the amount and date of the payment.

2

Software Copyright (c) 1996-2013 Best Case, LLC - www.bestcase.com

304025

Debtor shall make the following adequate protection payments:

☐ directly to the creditor; or

☒ to the Trustee pending confirmation of the plan.

| (a)<br>Creditor | (b)<br>Collateral | (c)<br>Adequate protection<br>payment amount |
|---|---|---|
| Wfs Financial/Wachovia Dealer Srvs | 2005 Nissan Altima ( 170,000 miles appr) | 75.00 |

(ii). **Post confirmation payments.** Post-confirmation payments to creditors holding claims secured by personal property shall be paid as set forth in subparagraphs (a) and (b). If the Debtor elects to propose a different method of payment, such provision is set forth in paragraph (c).

(a). **Claims to Which § 506 Valuation is NOT Applicable.** Claims listed in this subsection consist of debts secured by a purchase money security interest in a vehicle for which the debt was incurred within 910 days of filing the bankruptcy petition, or, if the collateral for the debt is any other thing of value, the debt was incurred within 1 year of filing. *See* § 1325(a)(5). After confirmation of the plan, the Trustee will pay to the holder of each allowed secured claim the monthly payment in column (f) based upon the amount of the claim in column (d) with interest at the rate stated in column (e). Upon confirmation of the plan, the interest rate shown below or as modified will be binding unless a timely written objection to confirmation is filed and sustained by the Court. Payments distributed by the Trustee are subject to the availability of funds.

☐ None; or

| (a)<br>Creditor | (b)<br>Collateral | (c)<br>Purchase<br>date | (d)<br>Claim<br>amount | (e)<br>Interest rate | (f)<br>Monthly<br>payment |
|---|---|---|---|---|---|
| Wfs Financial/Wachovia Dealer Srvs | 2005 Nissan Altima ( 170,000 miles appr) | Opened 11/01/12 Last Active 7/16/13 | 4,269.00 | 4.25% | $75.00 increasing to $120.00 in July 2014 |

(b). **Claims to Which § 506 Valuation is Applicable.** Claims listed in this subsection consist of any claims secured by personal property not described in Plan paragraph 6(A)(ii)(a). After confirmation of the plan, the Trustee will pay to the holder of each allowed secured claim the monthly payment in column (f) based upon the replacement value as stated in column (d) or the amount of the claim, whichever is less, with interest at the rate stated in column (e). The portion of any allowed claim that exceeds the value indicated below will be treated as an unsecured claim. Upon confirmation of the plan, the valuation and interest rate shown below or as modified will be binding unless a timely written objection to confirmation is filed and sustained by the Court. Payments distributed by the Trustee are subject to the availability of funds.

☒ None; or

| (a)<br>Creditor | (b)<br>Collateral | (c)<br>Purchase<br>date | (d)<br>Replacement<br>value | (e)<br>Interest rate | (f)<br>Monthly<br>payment |
|---|---|---|---|---|---|
| -NONE- | | | | | |

(c). **Other provisions.**

3

**(B). Claims Secured by Real Property Which Debtor Intends to Retain.** Debtor will make all post-petition mortgage payments directly to each mortgage creditor as those payments ordinarily come due. These regular monthly mortgage payments, which may be adjusted up or down as provided for under the loan documents, are due beginning the first due date after the case is filed and continuing each month thereafter, unless this Plan provides otherwise. Trustee may pay each allowed arrearage claim at the monthly rate indicated below until paid in full. Trustee will pay interest on the mortgage arrearage if the creditor requests interest, unless an objection to the claim is filed and an order is entered disallowing the requested interest.

| (a) Creditor | (b) Property description | (c) Estimated pre-petition arrearage | (d) Projected monthly arrearage payment |
|---|---|---|---|
| JP Morgan Chase & Co. | 9914 Scarlet Oak Drive Douglasville, GA 30135 | 53,823.54 | $1000.00 increasing to $1517.00 in July 2014 |

**(C). Surrender of Collateral.** Debtor will surrender the following collateral no later than thirty (30) days from the filing of the petition unless specified otherwise in the Plan. Any claim filed by a secured lien holder whose collateral is surrendered will be treated as unsecured. Any involuntary repossession/foreclosure prior to confirmation of this Plan must be obtained by a filed motion and Court order, unless the automatic stay no longer applies under § 362(c). Upon Plan confirmation, the automatic stay will be deemed lifted for the collateral identified below for surrender and the creditor need not file a Motion to Lift the Stay in order to repossess, foreclose upon or sell the collateral. Nothing herein is intended to lift any applicable co-Debtor stay, or to abrogate Debtor's state law contract rights.

| (a) Creditor | (b) Collateral to be surrendered |
|---|---|
| -NONE- | |

**7. Unsecured Claims.** Debtor estimates that the total of general unsecured debt not separately classified in Plan paragraph 10 is $ **1,715.54** . After all other classes have been paid, Trustee will pay to the creditors with allowed general unsecured claims a pro rata share of $ **1,715.54** or **100** %, whichever is greater. Trustee is authorized to increase this dollar amount or percentage, if necessary, in order to comply with the applicable commitment period stated in paragraph 2 of this Plan.

**8. Executory Contracts and Unexpired Leases.** The following executory contracts and unexpired leases are assumed, and payments due after the filing of the case will be paid directly by Debtor, not through Trustee, as set forth below in column (c).

Debtor proposes to cure any default by paying the arrearage on the assumed leases or contracts in the amounts projected in column (d) at the same time that payments are made to secured creditors. All other executory contracts and unexpired leases of personal property are rejected upon conclusion of the confirmation hearing.

☒ None; or

| (a) Creditor | (b) Nature of lease or executory contract | (c) Payment to be paid directly by Debtor | (d) Projected arrearage monthly payment through plan (for informational purposes) |
|---|---|---|---|
| -NONE- | | | |

**9. Property of the Estate.** Property of the estate shall not vest in Debtor until the earlier of Debtor's discharge or dismissal of this case, unless the Court orders otherwise.

**10. Other Provisions:**

(A). **Special classes of unsecured claims.**

(B). **Other direct payments to creditors.**

(C). **Other allowed secured claims:** A proof of claim which is filed and allowed as a secured claim, but is not treated specifically under the plan, shall be funded with __% interest as funds become available after satisfaction of the allowed secured claims which have been treated by the plan and prior to payment of allowed non-administrative priority claims (except domestic support obligation claims as set forth in paragraph 5(A), above) and general unsecured claims. Notwithstanding the foregoing, the Debtor or any other party in interest may object to the allowance of the claim.

4

04.14.08

Best Case Bankruptcy

004025

(D). **Claims subject to lien avoidance pursuant to 11 U.S.C. §522(f):** The allowed secured claim of each creditor listed below shall not be funded until all allowed, secured claims which are being treated by the plan are satisfied. If an order is entered avoiding the creditor's lien, that creditor's claim shall be treated as a general, unsecured claim to the extent it is not otherwise secured by property of the estate and treated by the plan. To the extent that the creditor's lien is not avoided and is not otherwise treated by the plan, the secured claim shall be funded as set forth in the above paragraph. This paragraph shall apply to the following creditors:
-NONE-

(E). **Other Provisions:**

Any Federal tax refunds the Debtor is entitled to receive during the applicable commitment period shall be paid into the Debtor's Chapter 13 case. Further, the Debtor authorizes and instructs the Internal Revenue Service to send any refund for said years directly to the Debtor's Chapter 13 Trustee.

Upon written request to the Chapter 13 Trustee, the Debtor may retain up to $1,500.00 of a tax refund without a motion being filed.

Any fees, expenses, and charges asserted under Fed. R. Bankr. P. 3002.1(c) are not to be funded through the Chapter 13 plan, and the Debtor will pay these post petition expenses directly to the mortgage holder/servicer unless they are disallowed by order of the court.

Date **January 3, 2014**

Signature **/s/ Gregory Lamar Almond**
**Gregory Lamar Almond**
Debtor

Date **January 3, 2014**

Signature **/s/ Shannon Smith GA Bar No.**
**Shannon Smith GA Bar No. 733895**
Attorney
**The Cochran Firm**
**127 Peachtree Street, NE**
**Suite 700**
**Atlanta, GA 30303**
**888-777-4910 Fax:404-577-0660**

5

04.14.08

Best Case Bankruptcy

04025

## UNITED STATES OF AMERICA
## DEPARTMENT OF THE TREASURY
## COMPTROLLER OF THE CURRENCY

| | |
|---|---|
| **In the Matter of:** )<br>)<br>JPMorgan Chase Bank, N.A. )<br>New York, NY )<br>)<br>) | AA-EC-11-15 |

### CONSENT ORDER

The Comptroller of the Currency of the United States of America ("Comptroller"), through his national bank examiners and other staff of the Office of the Comptroller of the Currency ("OCC"), as part of an interagency horizontal review of major residential mortgage servicers, has conducted an examination of the residential real estate mortgage foreclosure processes of JPMorgan Chase Bank, N.A., New York, New York ("Bank"). The OCC has identified certain deficiencies and unsafe or unsound practices in residential mortgage servicing and in the Bank's initiation and handling of foreclosure proceedings. The OCC has informed the Bank of the findings resulting from the examination.

The Bank, by and through its duly elected and acting Board of Directors ("Board"), has executed a "Stipulation and Consent to the Issuance of a Consent Order," dated April 13, 2011 ("Stipulation and Consent"), that is accepted by the Comptroller. By this Stipulation and Consent, which is incorporated by reference, the Bank has consented to the issuance of this Consent Cease and Desist Order ("Order") by the Comptroller. The Bank has committed to taking all necessary and appropriate steps to remedy the deficiencies and unsafe or unsound practices identified by the OCC, and to enhance the Bank's residential mortgage servicing and

EXHIBIT-"P"

foreclosure processes. The Bank has begun implementing procedures to remediate the practices addressed in this Order.

## ARTICLE I

## COMPTROLLER'S FINDINGS

The Comptroller finds, and the Bank neither admits nor denies, the following:

(1)  The Bank is among the largest servicers of residential mortgages in the United States, and services a portfolio of 6,300,000 residential mortgage loans. During the recent housing crisis, a substantially large number of residential mortgage loans serviced by the Bank became delinquent and resulted in foreclosure actions. The Bank's foreclosure inventory grew substantially from 2008 through 2010.

(2)  In connection with certain foreclosures of loans in its residential mortgage servicing portfolio, the Bank:

(a)  filed or caused to be filed in state and federal courts affidavits executed by its employees or employees of third-party service providers making various assertions, such as ownership of the mortgage note and mortgage, the amount of the principal and interest due, and the fees and expenses chargeable to the borrower, in which the affiant represented that the assertions in the affidavit were made based on personal knowledge or based on a review by the affiant of the relevant books and records, when, in many cases, they were not based on such personal knowledge or review of the relevant books and records;

(b)  filed or caused to be filed in state and federal courts, or in local land records offices, numerous affidavits or other mortgage-related documents that were not properly notarized, including those not signed or affirmed in the presence of a notary;

2

(c) litigated foreclosure proceedings and initiated non-judicial foreclosure proceedings without always ensuring that either the promissory note or the mortgage document were properly endorsed or assigned and, if necessary, in the possession of the appropriate party at the appropriate time;

(d) failed to devote sufficient financial, staffing and managerial resources to ensure proper administration of its foreclosure processes;

(e) failed to devote to its foreclosure processes adequate oversight, internal controls, policies, and procedures, compliance risk management, internal audit, third party management, and training; and

(f) failed to sufficiently oversee outside counsel and other third-party providers handling foreclosure-related services.

(3) By reason of the conduct set forth above, the Bank engaged in unsafe or unsound banking practices.

Pursuant to the authority vested in him by the Federal Deposit Insurance Act, as amended, 12 U.S.C. §1818(b), the Comptroller hereby ORDERS that:

## ARTICLE II

### COMPLIANCE COMMITTEE

(1) The Board shall maintain a Compliance Committee of at least three (3) directors, of which at least two (2) may not be employees or officers of the Bank or any of its subsidiaries or affiliates. In the event of a change of the membership, the name of any new member shall be submitted to the Examiner-in-Charge for Large Bank Supervision at the Bank ("Examiner-in-Charge"). The Compliance Committee shall be responsible for monitoring and coordinating the

3

Bank's compliance with the provisions of this Order. The Compliance Committee shall meet at least monthly and maintain minutes of its meetings.

(2) Within ninety (90) days of this Order, and within thirty (30) days after the end of each quarter thereafter, the Compliance Committee shall submit a written progress report to the Board setting forth in detail actions taken to comply with each Article of this order, and the results and status of those actions.

(3) The Board shall forward a copy of the Compliance Committee's report, with any additional comments by the Board, to the Deputy Comptroller for Large Bank Supervision ("Deputy Comptroller") and the Examiner-in-Charge within ten (10) days of receiving such report.

## ARTICLE III

### COMPREHENSIVE ACTION PLAN

(1) Within sixty (60) days of this Order, the Bank shall submit to the Deputy Comptroller and the Examiner-in-Charge an acceptable plan containing a complete description of the actions that are necessary and appropriate to achieve compliance with Articles IV through XII of this Order ("Action Plan"). In the event the Deputy Comptroller asks the Bank to revise the Action Plan, the Bank shall promptly make the requested revisions and resubmit the Action Plan to the Deputy Comptroller and the Examiner-in-Charge. Following acceptance of the Action Plan by the Deputy Comptroller, the Bank shall not take any action that would constitute a significant deviation from, or material change to, the requirements of the Action Plan or this Order, unless and until the Bank has received a prior written determination of no supervisory objection from the Deputy Comptroller.

4

(2)  The Board shall ensure that the Bank achieves and thereafter maintains compliance with this Order, including, without limitation, successful implementation of the Action Plan. The Board shall further ensure that, upon implementation of the Action Plan, the Bank achieves and maintains effective mortgage servicing, foreclosure, and loss mitigation activities (as used herein, the phrase "loss mitigation" shall include, but not be limited to, activities related to special forbearances, modifications, short refinances, short sales, cash-for-keys, and deeds-in-lieu of foreclosure and be referred to as either "Loss Mitigation" or "Loss Mitigation Activities"), as well as associated risk management, compliance, quality control, audit, training, staffing, and related functions.  In order to comply with these requirements, the Board shall:

(a)  require the timely reporting by Bank management of such actions directed by the Board to be taken under this Order;

(b)  follow-up on any non-compliance with such actions in a timely and appropriate manner; and

(c)  require corrective action be taken in a timely manner for any non-compliance with such actions.

(3)  The Action Plan shall address, at a minimum:

(a)  financial resources to develop and implement an adequate infrastructure to support existing and/or future Loss Mitigation and foreclosure activities and ensure compliance with this Order;

(b)  organizational structure, managerial resources, and staffing to support existing and/or future Loss Mitigation and foreclosure activities and ensure compliance with this Order;

(c) metrics to measure and ensure the adequacy of staffing levels relative to existing and/or future Loss Mitigation and foreclosure activities, such as limits for the number of loans assigned to a Loss Mitigation employee, including the single point of contact as hereinafter defined, and deadlines to review loan modification documentation, make loan modification decisions, and provide responses to borrowers;

(d) governance and controls to ensure compliance with all applicable federal and state laws (including the U.S. Bankruptcy Code and the Servicemembers Civil Relief Act ("SCRA")), rules, regulations, and court orders and requirements, as well as the Membership Rules of MERSCORP, servicing guides of the Government Sponsored Enterprises ("GSEs") or investors, including those with the Federal Housing Administration and those required by the Home Affordable Modification Program ("HAMP"), and loss share agreements with the Federal Deposit Insurance Corporation (collectively "Legal Requirements"), and the requirements of this Order.

(4) The Action Plan shall specify timelines for completion of each of the requirements of Articles IV through XII of this Order.  The timelines in the Action Plan shall be consistent with any deadlines set forth in this Order.

## ARTICLE IV

### COMPLIANCE PROGRAM

(1) Within sixty (60) days of this Order, the Bank shall submit to the Deputy Comptroller and the Examiner-in-Charge an acceptable compliance program to ensure that the mortgage servicing and foreclosure operations, including Loss Mitigation and loan modification, comply with all applicable Legal Requirements, OCC supervisory guidance, and the

6

requirements of this Order and are conducted in a safe and sound manner ("Compliance Program"). The Compliance Program shall be implemented within one hundred twenty (120) days of this Order. Any corrective action timeframe in the Compliance Program that is in excess of one hundred twenty (120) days must be approved by the Examiner-in-Charge. The Compliance Program shall include, at a minimum:

(a) appropriate written policies and procedures to conduct, oversee, and monitor mortgage servicing, Loss Mitigation, and foreclosure operations;

(b) processes to ensure that all factual assertions made in pleadings, declarations, affidavits, or other sworn statements filed by or on behalf of the Bank are accurate, complete, and reliable; and that affidavits and declarations are based on personal knowledge or a review of the Bank's books and records when the affidavit or declaration so states;

(c) processes to ensure that affidavits filed in foreclosure proceedings are executed and notarized in accordance with state legal requirements and applicable guidelines, including jurat requirements;

(d) processes to review and approve standardized affidavits and declarations for each jurisdiction in which the Bank files foreclosure actions to ensure compliance with applicable laws, rules and court procedures;

(e) processes to ensure that the Bank has properly documented ownership of the promissory note and mortgage (or deed of trust) under applicable state law, or is otherwise a proper party to the action (as a result of agency or other similar status) at all stages of foreclosure and bankruptcy litigation, including appropriate transfer and delivery of endorsed notes and assigned mortgages or deeds of trust at the formation of a residential mortgage-backed security,

7

and lawful and verifiable endorsement and successive assignment of the note and mortgage or deed of trust to reflect all changes of ownership;

(f) processes to ensure that a clear and auditable trail exists for all factual information contained in each affidavit or declaration, in support of each of the charges that are listed, including whether the amount is chargeable to the borrower and/or claimable by the investor;

(g) processes to ensure that foreclosure sales (including the calculation of the default period, the amounts due, and compliance with notice requirements) and post-sale confirmations are in accordance with the terms of the mortgage loan and applicable state and federal law requirements;

(h) processes to ensure that all fees, expenses, and other charges imposed on the borrower are assessed in accordance with the terms of the underlying mortgage note, mortgage, or other customer authorization with respect to the imposition of fees, charges, and expenses, and in compliance with all applicable Legal Requirements and OCC supervisory guidance;

(i) processes to ensure that the Bank has the ability to locate and secure all documents, including the original promissory notes if required, necessary to perform mortgage servicing, foreclosure and Loss Mitigation, or loan modification functions;

(j) ongoing testing for compliance with applicable Legal Requirements and OCC supervisory guidance that is completed by qualified persons with requisite knowledge and ability (which may include internal audit) who are independent of the Bank's business lines;

(k) measures to ensure that policies, procedures, and processes are updated on an ongoing basis as necessary to incorporate any changes in applicable Legal Requirements and OCC supervisory guidance;

(l)  processes to ensure the qualifications of current management and supervisory personnel responsible for mortgage servicing and foreclosure processes and operations, including collections, Loss Mitigation and loan modification, are appropriate and a determination of whether any staffing changes or additions are needed;

(m)  processes to ensure that staffing levels devoted to mortgage servicing and foreclosure processes and operations, including collections, Loss Mitigation, and loan modification, are adequate to meet current and expected workload demands;

(n)  processes to ensure that workloads of mortgage servicing, foreclosure and Loss Mitigation, and loan modification personnel, including single point of contact personnel as hereinafter defined, are reviewed and managed.  Such processes, at a minimum, shall assess whether the workload levels are appropriate to ensure compliance with the requirements of Article IX of this Order, and necessary adjustments to workloads shall promptly follow the completion of the reviews.  An initial review shall be completed within ninety (90) days of this Order, and subsequent reviews shall be conducted semi-annually;

(o)  processes to ensure that the risk management, quality control, audit, and compliance programs have the requisite authority and status within the organization so that appropriate reviews of the Bank's mortgage servicing, Loss Mitigation, and foreclosure activities and operations may occur and deficiencies are identified and promptly remedied;

(p)  appropriate training programs for personnel involved in mortgage servicing and foreclosure processes and operations, including collections, Loss Mitigation, and loan modification, to ensure compliance with applicable Legal Requirements and supervisory guidance; and

(q)  appropriate procedures for customers in bankruptcy, including a prohibition on collection of fees in violation of bankruptcy's automatic stay (11 U.S.C. § 362), the discharge injunction (11 U.S.C. § 524), or any applicable court order.

## ARTICLE V

## THIRD PARTY MANAGEMENT

(1)  Within sixty (60) days of this Order, the Bank shall submit to the Deputy Comptroller and the Examiner-in-Charge acceptable policies and procedures for outsourcing foreclosure or related functions, including Loss Mitigation and loan modification, and property management functions for residential real estate acquired through or in lieu of foreclosure, to any agent, independent contractor, consulting firm, law firm (including local counsel in foreclosure or bankruptcy proceedings retained to represent the interests of the owners of mortgages), property management firm, or other third-party (including any affiliate of the Bank) ("Third-Party Providers").  Third-party management policies and procedures shall be implemented within one hundred twenty (120) days of this Order.  Any corrective action timetable that is in excess of one hundred twenty (120) days must be approved by the Examiner-in-Charge.  The policies and procedures shall include, at a minimum:

(a)  appropriate oversight to ensure that Third-Party Providers comply with all applicable Legal Requirements, OCC supervisory guidance (including applicable portions of OCC Bulletin 2001-47), and the Bank's policies and procedures;

(b)  measures to ensure that all original records transferred from the Bank to Third-Party Providers (including the originals of promissory notes and mortgage documents) remain within the custody and control of the Third-Party Provider (unless filed with the

10

(8)  This Order is intended to be, and shall be construed to be, a final order issued pursuant to 12 U.S.C. § 1818(b), and expressly does not form, and may not be construed to form, a contract binding the Comptroller or the United States.  Nothing in this Order shall affect any action against the Bank or its institution-affiliated parties by a bank regulatory agency, the United States Department of Justice, or any other law enforcement agency, to the extent permitted under applicable law.

(9)  The terms of this Order, including this paragraph, are not subject to amendment or modification by any extraneous expression, prior agreements, or prior arrangements between the parties, whether oral or written.

(10)  Nothing in the Stipulation and Consent or this Order, express or implied, shall give to any person or entity, other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under the Stipulation and Consent or this Order.

(11)  The Bank consents to the issuance of this Order before the filing of any notices, or taking of any testimony or adjudication, and solely for the purpose of settling this matter without a formal proceeding being filed.

IT IS SO ORDERED, this 13th day of April, 2011.

/s/
Sally G. Belshaw
Deputy Comptroller
Large Bank Supervision

27

## IN THE SUPERIOR COURT OF DOUGLAS COUNTY

## STATE OF GEORGIA

**GREG & JOCELYN ALMOND**

**CIVIL ACTION NO.: 18-CV-00150**

      **Plaintiff,**

vs.

[PLEADING TITLE]

**THE BANK OF NEW YORK MELLON, AS**

**TRUSTEE**

      **Defendant**

### CERTIFIICATE OF SERVICE

I, the undersigned, hereby certify that I have this day served a copy of the

Plaintiffs' **SUPPLEMENTAL BRIEF IN SUPPORT OF COMPLAINT** which was filed in the Superior

Court of Douglas County Georgia on the _____ day of February, 2018, in the manner

indicated.

### The following Parties have been served via U.S. Mail:

Cc: McCalla Raymer Leibert Pierce, LLC
   1544 Old Alabama Road
   Roswell, Georgia 30076
   (678) 281-6508
   Gregory.Krivo@mccalla.com

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOLLOWING IS TRUE AND CORRECT

      Dated this _____ of February, 2018.

 

                              _____

                              GREG L. ALMOND, FILED PRO SE